Good morning, Your Honors. May it please the Court. My name is Deborah Smith and I represent the petitioner, Dr. Wah Fong, in these proceedings. I'd like to reserve two minutes for rebuttal, if I may. Dr. Fong entered the United States legally in 1992 with his wife in exchange visitor status. They had a daughter here after they arrived. In 1996, the couple became lawful permanent residents. Thereafter, in November of 1997, there was a domestic incident at their home that led, eventually, to these removal proceedings and the removal order under consideration by the Court today. In February of 1998, there was a conviction under Montana law for partner or family member assault. That conviction subsequently was vacated in June of 1998 on State constitutional grounds, and is not the basis for the removal order. However, I mention it because the government and the immigration judge's decision, the immigration judge's decision and the government in its brief relies somewhat on charging documents for that original charge to support the ground of removability alleged. In October of 1998, Dr. Fong pled guilty to an amended charge of misdemeanor simple assault under Montana law, section 45-5-201. We believe that there are three reasons why the Board of Immigration Appeals and the immigration judge's decision should be reversed and the removal order should be vacated. The first two reasons concern whether Dr. Fong, in fact, was convicted of a crime of domestic violence within the meaning of section 237A2ei of the Immigration Nationality Act. We allege, first, that he has not been convicted of a crime of violence, and we say that, second, he has not been convicted of a crime of domestic violence or family violence under the State laws of Montana. The third reason the conviction should be reversed concerns the Board's inappropriate streamlining of Dr. Fong's appeal. First, the Montana misdemeanor assault statute of which Dr. Fong was convicted is not a crime of violence. In the first place, I – well, first of all, as a preference, I'd like to direct the Court's attention to the portion of the administrative record that was not cited in either party's brief that contains the record of conviction, and that is on page 130 of the record, the amended complaint that Dr. – that was filed in Dr. Fong's case. And then on page 131 through 133 is the plea agreement, page 134 is the sentencing order. The amended complaint charges only that Dr. Fong purposely or knowingly caused bodily injury or caused reasonable apprehension of bodily injury to his wife. Dr. Fong pled guilty only to the second portion of that allegation in the complaint. That is, he admitted in paragraph 5 of his plea agreement that he caused reasonable apprehension of bodily injury to his wife. In paragraph 9, he states that he did so by throwing a shirt at her and otherwise making threatening gestures directed at her during a heated argument. The government alleges both that the statute that Dr. Fong is convicted of is a crime, necessarily a crime of violence, and they allege that the conduct that Dr. Fong was convicted of is a crime of violence. Causing reasonable apprehension of bodily injury is not necessarily, does not necessarily involve an element of the use, attempted use or threatened use of physical force as required by 18 U.S.C. 16. The government alleges that it does. An easy example of causing bodily injury without physical force would be, for example, threatening to poison someone, either killing them or damaging their lungs by carbon monoxide poisoning. The government also alleges that the – excuse me – threatening to hit somebody is not – He didn't threaten – well, what he pledged – He threatened to commit bodily injury. Excuse me, no. He threatened – the crime that he was convicted of was causing a reasonable apprehension of bodily injury. Right. Isn't that – isn't that, you know, going back to criminal law 101 that we all studied as first-year law students, the distinction between assault and battery? Isn't assault the – causing the apprehension of bodily injury, imminent bodily injury? Isn't that assault? Battery is the actual hitting or touching. I'm sorry, Your Honor. In certain situations, I would not dispute, but they're not involved in this case, that is – Yes. He pled guilty to assault. Okay. And it was against his wife, right? Correct. So I'm – I'm having a disconnect here between your argument that this is somehow not a domestic assault. Is this a domestic assault or not? Your Honor, it is a domestic assault. However – Isn't that what the statute says? No, Your Honor. I respectfully disagree. Okay. What the – what the statute says is that the crime has to be a crime of violence. Throwing a shirt – throwing a shirt at her and threatening to commit bodily injury to her is not a crime of violence? Well, Your Honor, what he pled guilty to was making threatening gestures directed at her, and we don't know what those are. Well, said her enough so she called the police. She did call the police. And he was convicted, Your Honor. Yes. However, what this Court has said in E.V.I.N.S. Was it throwing marshmallows at her in a jokey manner? No. But that – Your Honor, he could have been threatening to throw shirts at her with heavy zippers. However, that could have scratched her, which is bodily injury. This Court has said that to constitute physical force, the injury – excuse me, the force must be violent in nature. In a similar case – this is a section of the case that's been very often construed by any court, and only once, I believe, previously construed by this Court earlier this summer in Tocatli v. Ashcroft after briefing on the case was – was completed. In Flores v. Ashcroft, a Seventh Circuit case, the conviction there was for misdemeanor battery under Indiana law, and the Court held that that offense, which involved touching in a rude, insolent or angry manner, did not constitute the physical force required under 18 U.S.C. 16 to result in removability under 237A2EI. And I would say that that is a similar analysis that can be applied to this case. How do we draw the line there? Is it whether it's a pajama top or marshmallows or – Heavily starched. Heavily starched is – Yeah. There are some humorous hypotheticals, but unfortunately, the consequences are very severe. Dr. Fong isn't eligible for any form of relief from removal. Cancellation of removal isn't available to him. He's not eligible for waiver of inadmissibility if he is deported and his U.S. citizen daughter gets old enough to petition for him to reenter. I would say this is a situation where the Court doesn't have to decide where to draw the line. But in the facts presented to this panel, the line hasn't been met. He pled guilty to throwing a shirt and making unspecified threatening gestures, which could – we don't know what they involved. The Court has stated many times that – You have below two minutes if you want to save some time for rebuttal. Well, I will close there and save the rest of my time for rebuttal. Thank you. Good morning, Your Honors. This is Frances McLachlan on behalf of the Attorney General John Ashcroft. I think what's important here under the acknowledged de novo standard of review is that the immigration judge's decision that this was a crime of violence against a protected person was reasonable and perfectly in line with the texts of the Federal and State statutes that she was required to interpret. Let me tell you the problem I have with the I.J.'s analysis here, and maybe you can provide some insight on your views. We analyze these cases under the Taylor approach, which is we take the statute – we try to take the statute of conviction and see whether or not it matches up with the relevant statute, in this case the immigration statute. And under Taylor, if a person could be convicted of conduct which would not fit the qualifying predicate statute, then we can't use the statute of conviction by itself as a means, in this case, for removal, or in a criminal case, we have their analogous situations in criminal law. So here what the ALJ does is this. He says – he does exactly the opposite, it looks like to me, of what Taylor requires. The ALJ says, well, there are four subsections here, and you could use this element from A, and you could use this element from B, and you could use this element from C, and therefore, taking it all together, this statute on its face qualifies. Now, Taylor requires just the opposite. It says if you can be convicted of conduct that would not fit within the statute, then you can't use the statute of conviction by itself to – as a qualifying offense. So that's where he stops. Now, we're talking about the second part where you use the modified categorical approach and say, under the statute of conviction, that would not fit the predicate offense. But I think it seems to me that the ALJ – or the IJ just got that wrong. Before we go on to the modified, I'd just like your views on that. Yes, Your Honor. Respectfully, the government's position would be that the immigration judge did not get it wrong. I think in instances such as this, for instance, the immigration judge followed the board precedent, as she was required to do, in determining whether a conviction is a crime of violence under Title 18. The board precedent directed her to look at the conviction at the statute itself. In this instance, yes, there were four parts. If I might interrupt. Yes, of course. The problem I have with that, on the four parts, is that one of them specifically embraces negligent conduct. And we have said that you can't use negligent conduct as qualifying as a crime of violence. So on a space, if someone could be convicted of negligent conduct, you can't count the conviction. Right. And I think that was subsection B, the negligent conduct. And I think what's important here is it's subsection D that this Petitioner was convicted of. No, there's no specification. Actually, yes, Your Honor. In the plea, at paragraph 9, at AR 131, he specifically says, I'm charged under, and he cites the statute, but the exact language he gives is the exact language of subsection D. Right. Well, the statute is just generically charged with 45-5201. There are no subsections specified in the amended complaint. And he pleads guilty to 45-5206. If you look at the amended complaint, it cites the statute, but the language, it quotes, is the direct language from subsection D, purposefully or knowingly causing a reasonable apprehension of bodily injury. That is the subsection of the ---- I think you're missing my point here. Okay. You go to that, you go to the charge in the judicially noticeable documents if you get past the first part of the analysis. The I.J. didn't do that. This would be the modified categorical approach. You say, well, what did he plead guilty to? And I understand that's sort of the crux of everybody's argument here. But the I.J. didn't do that. The I.J. said this crime unequivocally on its face is a crime of violence. If you take the statute. Well, I think the I.J.'s decision is right. I mean, if purposefully or knowingly causing a reasonable apprehension of bodily injury, that bodily injury language is what is important under this Montana statute. If you look at Title 18, it says, you know, we're in subsection A of section 16, and it says, you know, the use, threatened use or attempted use of physical force, the bodily injury required under the Montana statute can only occur if there's physical force. One necessarily follows the other. So in this regard, the I.J.'s ---- He's just talking about the statute in general, and I understand you're sort of mixing and matching. And don't worry, we'll get to that part of the argument. But he says, oh, you can take A and B and D and you get them all together, and we have the elements here. And that's not the way the Taylor analysis works, because under the statute, just purely the statute, you can be convicted of negligent conduct. So you can't just say, I mean, I think his analysis is wrong. Now, where that leads us to is the second part where you're getting to, I think, is saying under the modified approach, did he plead guilty to conduct that qualifies? Let's take that second approach, then. And I think, yes, the answer is, yes, he did. As I, you know, stated earlier, the amended complaint quotes the language of subsection D, and his plea acknowledges the violation of subsection D, which is purposefully or knowingly causing a reasonable apprehension of bodily injury. That necessarily takes us back, then, to Title 18's requisite of physical force, and you must have physical force to get to bodily injury. So even if we are in your second part, where you have directed me, I still think that the IJ's decision is correct. It's right in line. It's perfectly reasonable. There's no error in her analysis of that subsection of the Montana statute and Title 18. This statute went up with this petition to the Montana Supreme Court, right? I don't think so, Your Honor. Are you sure? No, but I don't recall seeing that in the record. Okay. I could be wrong about that. I think what Judge Ed was talking about is that there was an ineffective assistance of counsel claim. Yes. They didn't rule on the statute, but they said that it was a crime of violence. I think what that reflects is, originally, this petitioner was charged with a Well, he was charged with a domestic violence statute. Right. And that's the one that was withdrawn for ineffective assistance of counsel. Right. Exactly. And the reason for that ineffective assistance of counsel is because he was not apprised of the immigration consequences of his plea. But then he turned around, even under a different statute, and pled to exactly the same misconduct. That's correct. He did. He did plead guilty to the exact conduct under the assault statute. Well, as the other circuits have interpreted in this particular section, they talk about the risk of injury. And it's really difficult for me to see how, under the facts as pled, not necessarily perhaps as they occur, but as pled and the throwing a shirt poses any risk anymore. Well, I think you make an important, and I understand that. I think that's you're getting to a very important distinction that might be being crossed here, is it's not the underlying facts. I mean, that is clear from Board and this Court's precedent that the analysis required is not to look at the underlying facts, to look at the statute at which the person was convicted, and to determine based on the pleading documents. Right. So he pleads guilty of causing reasonable apprehension of bodily injury. But I guess what I'm saying is some of the other circuits have said there has to be a real risk of physical harm for this to apply. Now, we're limited to the documents that we have in court. And what he says he did is he threw a shirt at her. That, to me, necessarily puts into question whether or not there's a serious risk of physical harm here. Now, we haven't adopted that standard. I don't know if we will. I'm asking you to respond just because it's... I think the response would be what the IJ did here is look... I mean, she stated that those facts were irrelevant and not what she was to look at. She was just to look at the language of the Montana statute itself. Right. So that is also what I would urge this Court to do. Yes, but as I've indicated before, I think her analysis was incorrect on that. I mean, just my view of it. If there had been a charge under a specific subsection, that would be one thing. Or if she was considering it, what she did was take the statute as a whole and say, I can pick an element from A, B, and C, and D, and altogether I'll create a new crime here that fits. And that's not what Taylor does. If you can be convicted of conduct that's outside the range that's specified in the statute, you can't use the statute alone. And the IJ didn't get beyond that. That's where the IJ stopped. Now, can we jump ahead on your argument on the modified catechol approach? Probably so under the undisputed facts. That's something we'll have to think about. I do. I understand, Your Honor. And I'd like to also be available to assist the Court on the second prong of Petitioner's argument, just whether or not this actually needs to be a conviction for a crime of domestic violence. The second part of 237A2Ei. As put forth in the government's brief, the immigration judge's decision in this regard, too, was quite reasonable under the text of the statute. A protected person needs to be the victim of the conviction. And in the statute, as you see from the plain reading of it, goes on to list the different categories or persons who can qualify as protected person. And a person who's protected under a state domestic violence law, that's just one of the types of persons who qualify as a protected person. So I think in that regard, too, the immigration judge's decision is quite reasonable and can be affirmed under this Court's de novo review. Do you have any further questions for me? No. Thank you for your argument. Thank you. Thank you, Your Honors. With regard to the government's second point, my second point, that the statute 237A2Ei does not require a conviction under a state domestic or family violence law, that is precisely wrong. This is not the firearms statute, which this Court has previously construed in U.S. v. Ballas, which doesn't have the appending under the domestic violence laws of the jurisdiction where the offense occurred language that this statute does. That language has to mean something. If Congress wanted any conviction against a protected person for a crime of violence to constitute a ground of removal, it could have said that, and it could have made this subparagraph of law a lot shorter. But that is not what it did. Congress created a new ground of removability in 1996 for a narrow category of crimes that were not previously found to be removable offenses. So I think that that is a separate ground of removability, excuse me, a second ground on which the Court could reverse the finding of removability. We are also at odds with the government's approach that the statute on its face is a crime of violence. I believe that it's a crime of violence. I think the difficulty, I think the toughest thing that you have to answer, maybe you can assist me with this, is the fact that he pled guilty to reasonable apprehension, causing reasonable apprehension of bodily injury to another. Why doesn't that qualify, assuming, if we, assuming arguendo that we don't agree with you as to the statute? Why isn't that enough to constitute a crime of violence? Because under the Taylor-modified categorical approach, the Court is required to look at the record of conviction to determine, because the statute is ambiguous on its face, whether it constitutes a crime of violence or not. And when you look at the record of conviction, in fact, the government and I agree that the amended complaint actually does specify the paragraphs that Dr. Fong was charged with, and he pled guilty to only one of those paragraphs. But when you look at the conduct of what he did in the allowable documents in the plea agreement, that conduct is not, is not violent in nature. It does not rise to the level. The problem I have with that, the throwing of the pajama shirt, clearly. But threatening gestures from an angry husband. Why doesn't that qualify as violence? Well, I would say, Your Honor, there's a lot of threatening gestures that might not involve physical force. A lot of gestures, but. Threatening gestures. Threatening gestures imply that he's about to do something. He could, for example, be threatening to throw more shirts. He could be threatening to throw pants or coats or things that could scratch her, that could cause some form of bodily injury, that could be an assault under the Montana statute. But that are not a crime of violence within the meaning of 18 U.S.C. 16. That's what, that would be my response to that question. Hasn't Congress, though, said, and I certainly agree with Congress in this regard, that it's not an appropriate thing to do for a spouse to threaten another spouse with violence, and that it's serious enough so that if they're convicted of that crime, they should not, if they are enjoying the largesse of residence in this country, be allowed to stay? Well, Your Honor, Congress said some specific things when it added Section 237A to REI. They required the conviction to be for a crime of violence under a domestic violence law. Congress is --. I think we're going around in circles here. No, we appreciate everything. I'm sorry. I'm not trying to obfuscate. No, I know you're not. It's very difficult, and I'm having trouble with it myself, I'll be honest with you. Your Honor, I think that Congress wanted to include a new category of removable offenses. This Court is among the first in the nation that is struggling with what does the language of this relatively new provision of removability mean. And we suggest that whatever it means, the conviction at issue here does not fall within this. Congress might have said a lot and has said a lot of things about prohibiting domestic violence. But what's at issue here is whether Dr. Fong can be removed from the United States permanently as the – because he throwed a shirt at his wife and made unspecified threatening gestures. I wish he had just thrown the shirt. We take the conviction record as we find it, Your Honor, and he made threatening gestures. If there's nothing else, thank you for your time. Thank you, counsel. The case is here to be submitted. Thank you both for your arguments and briefing. Very helpful. We'll proceed to the next case on the oral argument calendar, which is the
judges: D Nelson, Thomas, Ezra